UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DIANE RAINEY,                                )
                                             )
          Plaintiff,                         )
                                             )
     vs.                                     )          Case No. 4:07CV00355 ERW
                                             )
JOHN MCWRIGHT, et al.,                       )
                                             )
          Defendants.                        )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant The Finish Line Man Alive, Inc.'s

Motion for Summary Judgment [doc. #79].

## I.     PROCEDURAL BACKGROUND

On February 21, 2007, Diane Rainey ("Plaintiff") filed a wrongful death lawsuit against

John McWright; The Finish Line Man Alive, Inc.; Northwest Plaza, Inc.; and Professional

Security Consultants, Inc. The lawsuit arose out of the shooting death of Plaintiff's son, Antone

Booker ("Decedent"). Plaintiff's initial complaint was subsequently amended, to add Northwest

Plaza Owner, LLC and the City of Berkeley as Defendants in the case. Plaintiff also filed a

stipulated motion to dismiss Northwest Plaza, Inc., without prejudice. In her final Third

Amended Complaint, Plaintiff alleged a cause of action against John McWright and the City of

Berkeley for violation of Decedent's civil rights and a negligence cause of action against

Professional Security Consultants, Inc.; The Finish Line Man Alive, Inc.; and Northwest Plaza

Owner, LLC. Three of the Defendants, John McWright, Professional Security Consultants, Inc,

and Northwest Plaza Owner, LLC, have settled with Plaintiff, and one of the Defendants, the City

of Berkeley, was dismissed without prejudice.  Thus, the only remaining Defendant is The Finish

Line Man Alive, Inc. ("Defendant").  On July 23, 2008, Defendant filed the pending Motion for

Summary Judgment.

## II.    BACKGROUND FACTS[1]

On August 9, 2006, Decedent and John McWright entered The Finish Line Man Alive

store in the Northwest Plaza Mall.  The store employees did not recognize either of the men, and

there is no indication that either had previously been in the store.  Approximately one or two

minutes passed, with nothing unusual happening between the men.  The men then became

engaged in a verbal altercation, until one of the men spat at the other.  Immediately thereafter, a

physical altercation ensued, as Mr. McWright advanced toward Decedent, who retreated deeper

into the store.  Saadia Innocent, a store employee, thought that there was going to be a fight, so

she approached the men, with the intention of telling them to stop.  As she got closer to the men,

---

[1]The Court's recitation of the facts is taken from Defendant's Statement of Uncontested
Facts [doc. #81], Plaintiff's Response to Defendant's Statement of Uncontested Facts [doc.
#101], Plaintiff's Statement of Additional Material Facts [doc. #101], and Defendant's Response
to Plaintiff's Statement of Additional Material Facts [doc. #105].  The Court also considered the
depositions of Saadia Innocent [doc. #101-2], Ronnell Wright [doc. #101-3], Shante Manning
[doc. #101-4], and Chief Clifton Ware [doc. #105-6].

Within its Reply, Defendant made a motion to strike Plaintiff's response to Defendant's
statement of uncontested facts and Plaintiff's statement of additional uncontested material facts.
Defendant alleged that Plaintiff's responses were "narrative, self-serving, incomplete, and do not
specifically cite to the record" and that Plaintiff's additional facts were "compound and
unsupported by competent evidence."  The Court rejects Defendant's argument, noting that while
Plaintiff did not limit her responses and additional facts to one fact per paragraph, she did provide
appropriate citations to the record.  Further, all of Plaintiff's facts considered by the Court in this
Motion were available in other documents available for review by this Court, namely the
depositions set forth above.

As discussed below in more detail, Plaintiff's Exhibit 6 is inadmissible, as it is hearsay and
includes improper legal conclusions.  As a result, the Court does not consider the evidence in
Plaintiff's Exhibit 6 for the purposes of this motion and does not include any statements of material
fact that rely upon this Exhibit for evidentiary support.

she noticed that Mr. McWright had a gun on his hip. Afraid that Mr. McWright might use the gun, Ms. Innocent retreated and informed one of her co-workers, Ronnell Wright, of the gun. Upon becoming informed of the gun, Mr. Wright completed the transaction he was performing so that the customers could exit the store, and called 911 to inform the police of the situation. Mr. Wright also called 911 a second time, approximately ten minutes after the first call.

While on the phone with 911 the first time, Mr. Wright yelled to the men that the police were on their way and that they needed to stop fighting. The men did not stop, rather they began chasing each other throughout the store. They eventually went through an emergency exit door that was located in the back of the store, and ended up in a back hallway, a common area of the mall. When they exited the store through the emergency exit, an alarm sounded, giving notice that the door had been opened. Once the men had gone through the door, Mr. Wright closed the door and held it shut, preventing the men from re-entering the store. While holding the door closed, Mr. Wright heard someone say, "open the door," but Mr. Wright did not oblige, as he was "trying to close the door to keep the guy with the gun from coming back into the store." (Pl. Ex. 2). About three or four seconds after Mr. Wright closed the door, gun shots were fired and Decedent was killed. Mr. Wright and those persons remaining in the store ran out the front door and into the common hallway that runs along the front of the store. One of the employees, likely Ms. Innocent, then closed the gate on the front entrance of the store to prevent people from entering the store. The entire incident, from the time the men began fighting in the store until the time the shots were fired, lasted somewhere between one and a half minutes and eight minutes.[2]

---

[2]The eight minute estimation came from Saadia Innocent, who testified at her deposition that the men were in the store for one or two minutes before they began arguing and that the entire incident lasted "maybe ten minutes."

The police did not arrive until after the shots were fired, approximately ten or fifteen minutes later.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in

his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV.     DISCUSSION

## A.      MOTION TO STRIKE

Local Rule 7-4.01(E) states that all facts that are not specifically controverted by the opposing party are deemed admitted. *See Deichmann v. Boeing Co.*, 36 F. Supp. 2d 1166, 1168 (E.D. Mo. 1999). Defendant has moved to strike Exhibit 6 of Plaintiff's Response to Defendant's Motion for Summary Judgment, and any reference therero, asserting that it does not contain admissible evidence.[3] Under Rule 56(e), the facts set forth to support or oppose a motion for summary judgment must be admissible in evidence to be considered by the Court. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003).

Evidence is admissible for the purpose of a summary judgment motion if it is in the form of either admissible documents or attested testimony, such as depositions or affidavits. 62 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 708 (L. Ed. 2007). The court may "consider only admissible evidence" and is prohibited from using "affidavits and depositions that were made without personal knowledge, consisted of hearsay, or purported to state legal conclusions as fact." *Murphy v. Mo. Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004). Inadmissable evidence "may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005).

Exhibit 6, the Report of Expert Witness William T. Gaut, is inadmissible for the purpose of this summary judgment motion for two reasons. First, the Report is inadmissible hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the

---

[3] The Court notes that there is some dispute over whether a motion to strike is appropriate as Fed. R. Civ. P. 12(f) applies to pleadings and not motions for summary judgment. *See, e.g. Aftergood v. Central Intelligence Agency*, 355 F. Supp. 2d 557, 564 (D.D.C. 2005). However, the Eighth Circuit has held that where an affidavit does not meet the standards set in Fed. R. Civ. P. 56(e), it is subject to a motion to strike. *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972).

trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid.

801(c). While a document containing attested testimony is admissible for the purpose of summary

judgment, an unsworn statement is hearsay and is not cognizable on a summary judgment motion.

*Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001) (citing *Mays v. Rhodes*,

255 F.3d 644, 648 (8th Cir. 2001)). A sworn statement is one that was made under penalty of

perjury, and that includes the affiant's signature and attestation before a notary public. *Elder-*

*Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006). Mr. Gaut's Report contains only his

signature and lacks attestation before a notary public. Because Mr. Gaut did not execute his

Report under penalty of perjury, it is inadmissible for purposes of this Motion.

In addition to being inadmissible hearsay, the relevant section of the Report merely

includes baseless allegations and legal conclusions about the facts of this case. "An expert's

opinion must be based on 'sufficient facts or data,'" and the Court "should exclude expert

testimony if it is so fundamentally unsupported that it can offer no assistance to the jury."

*Storage Tech. Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 928 (8th Cir. 2005). Further, when an

expert's opinion is "merely [an] opinion[] meant to substitute the judgment of the district court,"

the opinion is an inadmissible legal conclusion that the court should not consider. *In re*

*Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005). In his Report, Mr. Gaut

merely restates the facts of the case, adding some facts gleaned from Defendant's training manual.

He also makes baseless allegations, unsupported by facts or data, that the situation *might* have

been different had there been more customer safety training or if Defendant's employees would

have called mall security. He provides no analysis connecting the facts to these allegations and

instead offers only his final legal conclusion that Defendant "breached the duty to provide for the

safety and security of invitees onto their property, breached the duty to properly train and supervise employees, and [that] those breaches of duty directly contributed to the death of Antone Booker." These legal conclusions are inadmissible, and any other information provided in the Report is either already in evidence or is inadmissible as it is not based on "sufficient facts or data."

As a result, the Court cannot consider the evidence presented in Exhibit 6.

## B. MOTION FOR SUMMARY JUDGMENT

Plaintiff has alleged that Defendant's negligence was a direct and proximate cause of Decedent's death. Under Missouri law, in order to prevail on a negligence claim, "'the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty, and that plaintiff's injury was proximately caused by defendant's failure.'" *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 463 (Mo. 1998) (en banc) (quoting *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. 1990) (en banc)). The Court will address each of these elements in turn.

### 1. *Duty*

Whether a person has a duty to protect another person is a question of law that is based on foreseeability. *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 257 (Mo. 2002) (en banc). Specifically, "'[a] duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.'" *Id.* (quoting *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 62 (Mo. 1988) (en banc)).

Defendant first argues that it is entitled to summary judgment because the shooting that resulted in Decedent's death did not take place on Defendant's property, and, thus, it cannot be

held liable under premises liability. "The law of premises liability in Missouri provides that a property owner owes an invitee the duty to use reasonable and ordinary care to prevent injury to the invitee as the result of a dangerous condition existing on the premises." *Griffith v. Dominic*, 254 S.W.3d 195, 198 (Mo. Ct. App. 2008). It is important to note that Missouri law does not require the *injury* to occur on the owner's property, rather it only requires that there be a *dangerous condition* on the property.

Here, the actual killing of Decedent did not occur within Defendant's store, but the fight that resulted in that killing started and largely took place within the store. Defendant certainly owed the men a duty to use reasonable and ordinary care to prevent injury to them while they were within the confines of the store. Further, the employees of the store witnessed the fight, observed that Mr. McWright had a gun, and knew that Decedent was trying to get away from Mr. McWright; as a result, it was foreseeable to those employees that a shooting might occur. Because of this foreseeability, if there was some failure on the part of the Defendant while the men were in the store that could be attributed to the cause of Decedent's death, an inquiry to be addressed later in this analysis, Defendant could be held at least partially liable for the death, even though it occurred off of the store's property. *See generally Fincher v. Murphy*, 825 S.W.2d 890 (Mo. Ct. App. 1992). Thus, that the altercation ultimately concluded outside of the store does not preclude liability for the events that occurred within the store.

Defendant also argues that it is entitled to summary judgment because it does not have a duty to protect customers from third-party criminal acts. "A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable."

*L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 257 (Mo. 2002) (en

banc). There are, however, two exceptions to this general rule of non-liability:

> Under the first exception, the duty may arise when a person, known to be violent, is
> present on the premises or an individual is present who has conducted himself so as
> to indicate danger and sufficient time exists to prevent injury. The other exception
> recognizes a duty on the part of business owners to protect their invitees from the
> criminal acts of unknown third persons under certain special circumstances. A duty
> of care arises out of circumstances in which there is a foreseeable likelihood that
> particular acts or omissions will cause harm or injury.

*Id.* (internal quotations and citations omitted). As to the second exception, both parties make

persuasive arguments regarding whether there was a "foreseeable likelihood" of crime, based on

police reports for both the store itself and the mall within which the store was located. However,

it is not necessary to consider these arguments, as the Court finds that a duty exists under the first

exception.

In its Motion for Summary Judgment, Defendant argues that the exception cannot apply

because "there is no indication that anyone at The Finish Line had even seen the Decedent or the

off-duty police officer before the day of the shooting." This argument misses the mark. While it

is clear that a business would have a duty to protect customers from third-party criminal acts

when it has knowledge that a violent person is present, the exception also provides that a duty

exists when "an individual is present who has conducted himself so as to indicate danger and

sufficient time exists to prevent injury." *Ward Parkway Shopping Ctr.*, 75 S.W.3d at 257. This

does not require that the business have pre-existing knowledge of the person's violent

propensities; rather, it requires only that the business observe potentially dangerous behavior and

have enough time to do something about it.

In this case, John McWright and Decedent initially engaged in a verbal altercation, but it soon escalated to a physical altercation, with the men chasing each other around the store. The employees of the store were aware that Mr. McWright was carrying a gun. This is certainly the type of potentially dangerous behavior that triggers the exception. Further, the employees of the store had time to react to the situation and to attempt to prevent injury to the store patrons, as the evidence suggests that somewhere between approximately a minute and a half and approximately eight minutes elapsed between the beginning of the fight and the firing of gun shots. Thus, Defendant had a duty to use reasonable and ordinary care to prevent injury to Decedent, a customer of the store, from the third-party criminal acts of Mr. McWright.

## 2. *Breach of Duty*

Although it is clear that Defendant owed a duty to use reasonable and ordinary care to prevent injury to Decedent, Plaintiff cannot demonstrate that Defendant breached that duty in any way. "Breach of duty refers to the commission or omission of an act that the actor should or should not have done in accordance with the relevant standard of care." *Ostrander v. O'Banion*, 152 S.W.3d 333, 338 (Mo. Ct. App. 2004). More specifically, the issue is "what act should the tortfeasor have done or not done under the particular facts of the case, that can be characterized under the applicable definition as negligence." *Id.* While "it is agreed that whether the duty that exists has been breached is a question of fact for exclusive resolution by the jury," *Lumbermens Mut. Cas. Co. v. Thornton*, 92 S.W.3d 259, 266 (Mo. Ct. App. 2002), the Court finds that no reasonable jury could determine that Defendant breached its duty.

In this case, the store employees observed that John McWright and Decedent were engaged in an altercation and one of the employees, Saadia Innocent, began to approach the men,

with the intention of telling them to stop fighting within the store. However, when Ms. Innocent noticed that Mr. McWright was carrying a gun, she reasonably removed herself from the situation, in fear that Mr. McWright might use the gun. She informed another employee, Ronnell Wright, of the gun, and Mr. Wright dialed 911 to report the altercation to the police. In addition, Mr. Wright called 911 a second time, about ten minutes after he called the first time. While he was on the phone with 911 the first time, Mr. Wright informed Mr. McWright and Decedent that he had called the police and they were on their way. Mr. Wright also told the men that they needed to "chill out and stop," a tactic that usually works when patrons are behaving in an unruly fashion. When the men's fight forced them through the emergency exit door in the back of the store, a loud alarm sounded, notifying those in the surrounding area that the door had been opened. Mr. Wright went to the emergency exit door and closed the door and held it shut, to keep the men from reentering the store and endangering the other patrons. Upon hearing the gun shots, Mr. Wright and all others still remaining in the store ran out of the front entrance of the store and into the mall hallway. One of the store employees, presumably Ms. Innocent, closed the gate on the front entrance, preventing people from entering the store.

It is clear from the evidence presented in this case that no reasonable jury could find that Defendant breached its duty to use reasonable and ordinary care to prevent injury to Decedent. Defendant's employees responded to the situation effectively and reasonably, under the circumstances. They called 911, made sure their other customers were safe, and warned the men that they needed to stop fighting because the police were on their way. Short of physically separating the men and breaking up the fight, a dangerous act considering one of the men was armed, the Court can think of no additional act that the employees could have done to prevent the

unfortunate event of Decedent's death. Of course, no person is required to risk his or her own life in an attempt to prevent an armed attack on another person, even an employee of the store in which the attack takes place. *Meadows v. Friedman R.R. Salvage Warehouse*, 655 S.W.2d 718, 722 (Mo. Ct. App. 1983).

In her Third Amended Complaint, Plaintiff set forth various theories of how Defendant breached its duty to Decedent.[4] While all of these theories are rejected as a result of this Court's finding that there was nothing else Defendant could have done and that no reasonable jury could conclude that Defendant had breached its duty to Decedent, one theory in particular merits additional discussion.

Plaintiff argues that Defendant's employees attempted to intervene in the altercation and that, as a result, they had a duty to rescue Decedent. However, the cases cited by Plaintiff in support of this argument do not support the application of the rescue doctrine in this particular case. In order to be held liable under a duty to rescue, "a volunteer must increase the risk of harm or the harm must be suffered because the one being helped relied to his detriment on the voluntary undertaking. In the absence of such an increase in harm or detrimental reliance, the volunteer may abandon his or her assistance without liability." *Junior Coll. Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 451 (Mo. 2004) (en banc); *see also Stanturf v. Sipes*, 447 S.W.2d 558, 561 (Mo. 1969) (citing Restatement (Second) of Torts § 323). In this case, there is no evidence

_____

[4]Specifically, Plaintiff alleges that Defendant breached its duty to Decedent in the following respects: failure to adequately train and supervise its employees, failure to warn Decedent that he would not be protected from deadly force, failure to adequately respond to Decedent's needs, failure to have adequate security, failure to rescue Decedent from attack, failure to notify mall security and police, and fostering an environment in which violence is more prevalent.

that Decedent relied to his detriment on the actions of Defendant's employees, so there cannot be a duty to rescue unless Defendant's employees increased the risk of harm to Decedent. Plaintiff argues that Ronnell Wright's act of holding the emergency exit door closed increased the risk of harm to Decedent, but this argument must be rejected. Mr. Wright only performed this act in an attempt to prevent the fighting men, one of whom was armed, from reentering the store and endangering the customers and employees. By holding the door closed, Mr. Wright was fulfilling his duty to those persons not engaged in the altercation and, as a result, he could not also have had a duty to Decedent to open the door.

There is no genuine issue of material fact regarding the response of Defendant's employees to the altercation between Decedent and Mr. McWright. Based on these facts, the Court finds that no reasonable jury could conclude that Defendant breached its duty to use reasonable and ordinary care to prevent injury to Decedent. Thus, summary judgment is proper in this case.

### 3. *Causation*

In addition to not being able to demonstrate that Defendant breached its duty of care, Plaintiff cannot establish causation. "To establish causation, a plaintiff must prove both causation in fact and proximate cause." *Richey v. Philipp*, 259 S.W.3d 1, 8 (Mo. Ct. App. 2008) (citing *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. 1993) (en banc)). Causation in fact requires proof that "the injuries would not have occurred but for that conduct." *Id.* (internal quotations omitted). Proximate cause, however, requires the plaintiff to demonstrate that "'the defendant should be held liable because the harm is the reasonable and probable consequence of

the defendant's conduct.'" *Id.* (quoting *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 114 (Mo. 2007) (en banc)).

In her Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff makes much of Defendant's employees' failure to call mall security during the altercation in the store. Assuming only for the sake of argument that this amounted to a breach, Plaintiff still does not prevail because she cannot establish causation. The security officers in this particular mall were instructed not to enter the actual retail stores in the mall; rather, if they observed a problem or disturbance in a store, they were to "call dispatch to get some more eyes up there to act as witnesses and to . . . have dispatch call the police." (Def. Ex. E). Thus, even if one of Defendant's employees would have called mall security, it would not have helped the situation because they would have merely stood outside the store, observing the situation. In addition, Dispatch would have called the police, but the police had already been notified through Mr. Wright's two calls to 911. Further, had Mr. Wright elected to call mall security first, instead of calling 911, the police would have been notified even later than they were. Thus, there is no causation in fact, as it cannot be said that but for the failure of Defendant's employees to call mall security, the incident would not have occurred.

Plaintiff also argues that Defendant's employees should have called 911 and alerted the police earlier. Again, assuming only for the sake of argument that this amounted to a breach, Plaintiff cannot prevail because she cannot establish causation. In order for causation to exist, it must be demonstrated that the police could have been summonsed earlier, arrived earlier, and actually prevented the death. *See Meadows v. Friedman R.R. Salvage Warehouse*, 655 S.W.2d 718, 722 (Mo. Ct. App. 1983). According to Saadia Innocent, the police did not arrive at the

scene of the incident until about ten or fifteen minutes after the shots were fired. The entire incident lasted somewhere between a minute and a half and eight minutes. Thus, even if the employees had called the police the second the men started their verbal altercation, an unlikely proposition considering they were not aware that the fight would escalate or that Mr. McWright was carrying a gun, the police still would not have arrived in time to prevent the incident. Thus, there is no causation in fact, as it cannot be said that but for Defendant's employees' failure to call the police sooner, the incident would not have occurred.

In addition, with respect to the other theories of breach of duty asserted by Plaintiff in her Third Amended Complaint, the Court has been presented with no admissible evidence that would suggest these alleged "breaches" caused the death of Decedent. Plaintiff has failed to establish that a genuine issue of material fact exists regarding whether the outcome of the events of August 9, 2006 would have been different had Defendant given more training to its employees, warned Decedent that he would not be protected from deadly force, responded differently to the situation, provided more security, or attempted to rescue Decedent. Plaintiff also has failed to establish that a genuine issue of material fact exists regarding whether the environment fostered by the store was in any way attributable to the death of Decedent.

## V.   CONCLUSION

The Court finds that Defendant The Finish Line Man Alive, Inc. did have a duty to use reasonable and ordinary care to prevent injury to Decedent Antone Booker from the third-party criminal acts of Mr. McWright. However, the Court finds that no reasonable jury could conclude that Defendant breached this duty to Decedent. Further, the Court finds that Plaintiff has failed to demonstrate that a genuine issue of material fact exists regarding causation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant The Finish Line Man Alive, Inc.'s Motion

for Summary Judgment [doc. #79] is **GRANTED**.

Dated this <u>19th</u> Day of <u>December</u>, 2008.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE